ACCEPTED
14-09-00118-CV
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
3/23/2015 7:24:36 PM
CHRISTOPHER PRINE
CLERK

IN THE COURT OF APPEALS
FOR THE FOURTEENTH DISTRICT OF TEXAS
HOUSTON

Appeal No. 14-09-00118-CV

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS

3/23/2015 7:24:36 PM

CHRISTOPHER A. PRINE
Clerk

WOLF HOLLOW I, L.P.

Appellant,

v.

EL PASO MARKETING, L.P. and
ENTERPRISE TEXAS PIPELINE, LLC.

Appellees.

On Remand from the Supreme Court of Texas

**WOLF HOLLOW'S SUPPLEMENTAL REPLY BRIEF ON REMAND**

Respectfully submitted,

MCGUIREWOODS LLP

Jacks C. Nickens
State Bar No. 15013800
600 Travis Street, Suite 7500
Houston, Texas 77002
(713) 353-6668
(832) 214-9931 Fax
Email: jnickens@mcguirewoods.com
ATTORNEYS FOR APPELLANT

**ORAL ARGUMENT REQUESTED**

# IDENTITY OF PARTIES AND THEIR COUNSEL

**Appellant:**
Wolf Hollow I, L.P.

**Trial and Appeal Counsel for Appellant:**
Jacks C. Nickens
State Bar No. 15013800
McGuireWoods LLP
600 Travis Street, Suite 7500
Houston, Texas 77002
(713) 353-6668
(832) 214-9931 Fax

**Appellees:**
El Paso Marketing, L.P.

**Trial and Appeal Counsel for Appellees:**
D. Mitchell McFarland
State Bar No. 13597700
Munsch Hardt Kopf & Harr, PC
700 Milam Street, Suite 2700
Houston, Texas 77002
(713) 222-4041
(713) 222-5894 Fax

Enterprise Texas Pipeline, LLC

Michael Hendryx
State Bar. No. 09461200
Suzanne R. Chauvin
State Bar No. 04160600
M. Chad Gerke
State Bar No. 24027390
Strong Pipkin Bissell & Ledyard, L.L.P.
1301 McKinney, Ste. 2100
Houston, TX 77010
(713) 210-4377
(713) 651-1920 Fax

i

# **TABLE OF CONTENTS**

IDENTITY OF PARTIES AND COUNSEL ..........................................................i

TABLE OF CONTENTS.......................................................................... ii

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTORY STATEMENT OF ISSUES......................................................1

I.      The Supply Agreement Does NOT Bar Wolf Hollow's
Damage Claims..............................................................................3

II.     Section 21.1 Applies to Gas Quality Claims ....................................6

III.    El Paso Breached Its Duties Under Article V of the Supply Agreement........9

CONCLUSION .............................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Wolf Hollow I, L.P. v. El Paso Marketing, L.P. (Wolf Hollow II)*,
    383 S.W.3d 138 (Tex. 2012) .......................................................... 2, 3, 4, 7

*Wolf Hollow I, L.P. v. El Paso Marketing, L.P. (Wolf Hollow III)*,
    409 S.W.3d 879 (Tex. App.–Houston [14th Dist.]
    2013, pet. pending) ................................................................................. 5, 9

*Wolf Hollow I, L.P. v. El Paso Marketing, L.P. (Wolf Hollow IV)*,
    450 S.W.3d 121, 58 Tex. Sup. Ct. J. 108 (Tex. 2014) ........................... 5, 9

IN THE COURT OF APPEALS
FOR THE FOURTEENTH DISTRICT OF TEXAS
HOUSTON
_____

Appeal No. 14-09-00118-CV
_____

WOLF HOLLOW I, L.P.

Appellant,

v.

EL PASO MARKETING, L.P. and
ENTERPRISE TEXAS PIPELINE, LLC.

Appellees.
_____

On Remand from the Supreme Court of Texas
_____

**WOLF HOLLOW'S SUPPLEMENTAL REPLY BRIEF ON REMAND**
_____

TO THE HONORABLE COURT OF APPEALS:

## INTRODUCTORY STATEMENT OF ISSUES

Even after years of appellate review, Wolf Hollow's remaining arguments and El Paso's defenses bear repeating. El Paso breached the Supply Agreement by delivering contaminated gas to Wolf Hollow's plant, in violation of the pipeline

1

Tariff standards of quality.[1]  Such deliveries were a breach of the provisions of Article V's fuel management services as well as the quality provisions of Article XIV.[2]  The breaches caused Wolf Hollow to shut down the plant and necessitated the purchase of replacement power as "cover." The Supply Agreement and the general law of contracts provide remedies for El Paso's breach. El Paso concedes that Article XXI, entitled Default and Remedies, is not subject to Section 24.11's provision on consequential damages, at least in part. Section 21.1 provides a process for a replacement power remedy. There is "evidence," the Supreme Court has concluded, that Wolf Hollow complied with that process. *Wolf Hollow II* at 145.  Section 1.1's definition of "Cover Standard" for a "delivery failure" similarly relates to replacement power claims. Article XIV defines a quality failure as a delivery failure. Section 21.2 defines a delivery failure, including under Article XIV, as an "Event of Default." Section 21.3 provides remedies for events of default, including replacement power under section 21.1, the cover standard, and general contract principles.

El Paso's defenses to its breach were or are: 1) Article XIV provides an exclusive remedy for quality breaches; 2) replacement power damages are

---

[1] The Court's review is of the trial court's granting of summary judgment.  Disputed facts are subject to proof at trial on remand but for appellate purposes are accepted.

[2] The Court reviews legal conclusions *de novo*.  Wolf Hollow adopts and incorporates its prior briefs, including the defined terms used in previous filings.

consequential damages barred by the Supply Agreement unless permitted under Section 21.1; and 3) Section 21.1 does not apply to quality claims. El Paso lost its exclusive remedy argument and at least part of its consequential damages argument in the Texas Supreme Court. The matter now before this Court is the applicability of Article XXI to Wolf Hollow's gas quality claims.[3]

## I.      The Supply Agreement Does NOT Bar Wolf Hollow's Damage Claims.

El Paso begins its Supplemental Brief with the bold claim that the "following points cannot be disputed." (El Paso's Brief I at 1) Then, in the *same* paragraph, El Paso asserts the erroneous and disputed claim that the Supreme Court affirmed that "all of Wolf Hollow's damage claims for property damage and *replacement power* were claims barred *under the Agreement*."[4] [Emphasis added.] The Supreme Court did not hold that the Supply Agreement barred Wolf Hollow's claims for replacement power. To the contrary, the Court held that Wolf Hollow's replacement power claims were NOT barred under the Agreement. *Wolf Hollow II* at 145. Furthermore, the Court held there was "evidence" that Wolf Hollow complied, as best it could under the circumstances, under Section 21.1 (c) of the Supply Agreement. Specifically, the Court stated, "We thus conclude there is evidence Wolf Hollow is entitled to recover replacement-power damages under

---

[3] Technically, the Court is reviewing Declaration 4 of the trial court's Final Judgment in granting El Paso's motion for Summary Judgment.

[4] El Paso repeats the error later in its Supplemental Brief. *Id.* at 9.

3

Section 21.1 (c), precluding summary judgment against Wolf Hollow based on the consequential damages waiver." *Id.* The issue before the Court generally is not consequential damages. The issue is the applicability of Article XXI to gas quality claims.

El Paso has previously conceded that Article XXI is not subject to Section 24.11's limitations.[5] But, El Paso now argues that only Section 21.1 is excluded from the consequential damages waiver, not all of Article XXI, as El Paso previously stated. (El Paso's Brief I at 9, 19.) There is no basis in the language of the Supply Agreement for El Paso's extension of the waiver. El Paso cites none and offers no supporting argument. If the consequential damages exception applies to Section 21.1, it applies to all of Article XXI. In addition, El Paso's sought a "clarification" in its Motion for Rehearing that the Supreme Court did not intend "its holding to extend to replacement power purchased by Wolf Hollow *during the period of time the plant was out of service for repairs*." [Emphasis added.] (El Paso's Motion for Rehearing I at 2.) The Court denied the Motion without comment. With regard to Section 14.1, the Court noted that El Paso moved for rehearing, "arguing that "[t]he Court incorrectly construes El Paso's obligation under Section 14.1 of the Supply Agreement as to gas quality," *but we*

---

[5] "Article XXI provides an exception to Section 24.11 for deficiencies in gas quantity." El Paso's Brief I at 15. Also, *see* El Paso Brief on the Merits I in *Wolf Hollow II* (June 27, 2011 at 15). Citations and excerpts from the cited pleadings are reproduced in the Appendix.

*denied the motion.* [Emphasis added.] *Wolf Hollow IV*, n 1. The Court thus gave significance to arguments denied in the motion for rehearing. Judge Busby also found significance in the Supreme Court's denial of El Paso's motion for rehearing. *Wolf Hollow III* at 893.

El Paso's new argument ignores Section 21.3 which incorporates Section 21.1, meaning that all replacement power claims, including those under Article 1.1's definition of cover standard, are not subject to the consequential damages bar *if* Section 21.1 or the definition of cover applies. El Paso also overlooks Section 24.11(b). CR 548-49. There the Supply Agreement states that damages under Section 21.1 *and* 21.3 are capped at $26 Million. Wolf Hollow's claims are well within this cap. The structure of Section 24.11 offers an additional argument that damages under Section 21.1 (which deals only with replacement power) *and* Section 21.3 are not barred; they are capped.

Even if one accepts El Paso's more restricted concession, El Paso's position has been that Section 21.1 does not apply to quality claims, or the provisions of Section 21.1 (c) were not followed, or Section 21.1 does not apply to gas delivered and accepted, or Section 21.1 is not applicable when the plant is shut down. El Paso repeats these arguments in its Supplemental Brief at 9 to 16. Wolf Hollow addresses each of these familiar El Paso arguments below, but one starts the

5

analysis with El Paso's concession that replacement power is *not* barred by the consequential damages provision.

## II. Section 21.1 Applies to Gas Quality Claims.

For the reasons stated in Wolf Hollow's Supplemental Brief, no doubt should remain that Article XXI provides remedies for Wolf Hollow's quality claims. Article XIV expressly references Article XXI and replacement power. It "deems" a quality failure as a "delivery failure" under Article XXI. Article XXI provides a remedy for Article XIV gas quality delivery failures.[6] Conversely, Section 21.2 makes uncured delivery failures under Article XIV (and any other breach of a material provision in the Supply Agreement) an event of default. And Section 21.3 provides a panoply of remedies, including replacement power under Section 21.1, for an event of default. Except for a few paragraphs toward the end of its Supplemental Brief, El Paso ignores these contentions. (El Paso Supplemental Brief at 16 – 17).

Instead, El Paso reasserts its arguments listed above, each of which fails. The first of El Paso's arguments is that the procedures of Section 21.1 (c) were not followed. El Paso's position runs afoul of the Supreme Court's finding there was "evidence" that Wolf Hollow invoked and complied with these procedures for

---

[6] El Paso stated that "If Wolf Hollow rejects gas on the LSR pipeline as not meeting quality specifications, by the language of Article XIV, that action would be deemed a failure to deliver and Article XXI would apply." El Paso's Motion for Rehearing II at 11, n. 6. El Paso offers no argument to differentiate deliveries on the EPGT pipeline other than its failed exclusive remedy argument.

6

making replacement power claims, which makes the granting of summary judgment improper. *Wolf Hollow II* at 145.

El Paso offers a couplet of unsupported contractual arguments about Section 21.1 that together end in a nonsensical result. First, El Paso argues that Section 21.1 does not apply to gas "delivered and accepted." If El Paso delivers contaminated gas that shuts the plant down, El Paso claims there is no replacement power remedy. On the other hand, El Paso also claims that Section 21.1 does not apply when the plant is shut down for repairs. Together, El Paso's arguments mean that Section 21.1 does not apply if gas is delivered or *not* delivered. Under El Paso's scheme, replacement power is available only if Wolf Hollow schedules the delivery of gas and then refuses the delivery before it can be delivered. This is nonsense. The gas is delivered in huge quantities at very high pressures. "Refusal" under the circumstances El Paso posits is a practical impossibility. El Paso never gave Wolf Hollow notice it was delivering contaminated gas. The replacement power remedy is needed precisely when the plant is not producing power (i.e., "shut down"). However, El Paso argues these sophisticated parties agreed this is precisely when replacement power is *not* available. The Supreme Court rejected this argument: "[R]eplacement gas could not avoid a plant shutdown that had already occurred or remedy the power shortage to Wolf Hollow's customers. Only replacement power could remedy that shortage." *Id.*

7

Also, *see* El Paso's statement cited at page 4, supra, re El Paso's motion for rehearing in the Supreme Court. El Paso's Motion for Rehearing I. The situation at hand is one where Wolf Hollow "refused" the gas from El Paso after "accepting" gas that shut the plant down.

El Paso relies on the absence of the word "quality" from Section 21.1 while ignoring that Article XIV expressly refers to Article XXI and its remedies. The true magic words which appear in both are "delivery failure." Wolf Hollow may refuse to accept gas that does not meet quality specifications, and such refused gas "shall be deemed a failure…to deliver such Quantity of Gas in accordance with the terms of this Agreement, with EPME's liability for such failure determined in accordance with Article XXI hereof." This provision relates to the alternate gas delivery portal but is equally applicable to the EPGT point of delivery because the remedy there is not exclusive. The simple and unexceptional fact is that delivering gas that does not meet the Transporter's Tariff Standards is a "delivery failure" for which Article XXI remedies apply.

El Paso similarly ignores Section 21.2 (v) which provides that an uncured failure to perform any material provision of the Agreement is an event of default, and Section 21.3 provides that "the Party not in default shall have the right to pursue any other remedy under this Agreement….." Section 21.1 is a remedy under

8

the Agreement for replacement power that El Paso admits is not subject the consequential damages waiver. El Paso does not address Wolf Hollow's argument.

El Paso dismisses Wolf Hollow's contention that quality and quantity are interrelated as "unrelated to the issue at hand." (El Paso's Supplemental Brief at 14.) But the issue is whether Article XXI applies to Wolf Hollow's quality claim. The fact that gas quality is definitionally and operationally interrelated to gas quantity is directly related to this issue, and El Paso concedes there is a fact issue of whether the contaminated gas met Tariff specifications.

Finally, El Paso relies on Judge Busby's concurring opinion in *Wolf Hollow III*. Wolf Hollow addresses this point in its Supplemental Brief at 15-16. Judge Busby's opinion was based on an understandable misreading of Wolf Hollow's pleading.

## III. El Paso Breached Its Duties Under Article V of the Supply Agreement.

This Court and the Supreme Court have concluded that Wolf Hollow has alleged and provided evidence of El Paso's breach of its fuel management obligations under Article V of the Supply Agreement. *Wolf Hollow III* at 889-90; *Wolf Hollow IV* at n.2. The remaining question under Article V is whether the Supply Agreement provides a remedy. With regard to that question, the Supreme Court noted that Wolf Hollow's replacement power damages for breach of Article

9

V are not barred "if it can establish replacement power *damages.*" *Wolf Hollow IV* at n. 2.

## CONCLUSION

This case demands a fully developed trial record. Wolf Hollow asks that the Court remand for trial on the issue of replacement power damages for El Paso's delivery of contaminated gas to Wolf Hollow's plant.

Respectfully submitted,

MCGUIREWOODS LLP

/s/ Jacks C. Nickens
Jacks C. Nickens
State Bar No. 15013800
600 Travis Street, Suite 7500
Houston, Texas 77002
(713) 353-6668
(832) 214-9931 Fax

ATTORNEYS FOR APPELLANT

## CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies that the word count in this document is 1,849, in compliance with Texas Rules of Appellate Procedure 9.4.

/s/ Jacks C. Nickens
Jacks C. Nickens

10

## CERTIFICATE OF SERVICE

As required by Texas Rule of Appellate Procedure 6.3 and 9.5(b), (d), (e), I certify that I have served this document on all other parties which are listed below via email and U.S. first-class mail on the 23rd day of March, 2015:

*Via email* *mmcfarland@munsch.com*
*And U.S. First-Class Mail*
D. Mitchell McFarland
Munsch Hardt Kopf & Harr, PC
700 Milam Street, Suite 2700
Houston, TX 77002

/s/ Jacks C. Nickens
Jacks C. Nickens

65547180_1.docx

11

# APPENDIX

**The following pleadings are referenced at the indicated pages in Wolf Hollow's Supplemental Reply Brief on Remand and identified and designated by " ":**

## 14th Court of Appeals, C.A. No. 14-09-0018-CV

1. El Paso's Brief dated July 10, 2009 ("El Paso's Brief I")...........................3, 4

2. El Paso's Motion for Rehearing dated August 29, 2013 ("El Paso's Motion for Rehearing II") .......................................................6

## Supreme Court, C.A. No. 11-0059

3. El Paso's Brief on the Merits dated June 27, 2011 ("El Paso's Brief on the Merits I") ............................................................4

4. El Paso's Motion for Rehearing dated July 10, 2012 ("El Paso's Motion for Rehearing I") ..........................................................4

65601796_1.docx

11

# TAB 1

NO. 14-09-00118-CV

IN THE COURT OF APPEALS
FOR THE FOURTEENTH DISTRICT OF TEXAS

WOLF HOLLOW I, L.P.,
*Appellant*

v.

EL PASO MARKETING, L.P. and
ENTERPRISE TEXAS PIPELINE, INC.
*Appellees*

Appeal From The District Court of Harris County, Texas.
165th District Court
Trial Cause No. 2006-70615

APPELLEE EL PASO MARKETING'S BRIEF

D. Mitchell McFarland
State Bar No. 13597700
Kerry R. McEniry
State Bar No. 24041440
**HARRISON, BETTIS, STAFF,
    MCFARLAND & WEEMS, L.L.P.**
Wedge International Tower
1415 Louisiana St., 37th Floor
Houston, Texas 77002
Tel: (713) 843-7900
Fax: (713) 843-7901
ATTORNEYS FOR APPELLEE,
EL PASO MARKETING, L.P.

**ORAL ARGUMENT REQUESTED**

i

damages it sought to recover from El Paso described as "various categories of damages, the largest of which is replacement power" actually constitute direct damages. Brief at 34. Never in its response to El Paso's Motion for Summary Judgment or in its post submission brief did Wolf Hollow assert any of its damages were direct damages. CR 3rd Supp. 1-24; CR 1st Supp. 1-10. Wolf Hollow has waived any right to now re-categorize the damage claims for the purposes of this appeal. *See, e.g.,* TEX. R. APP. P. 33.1; TEX. R. CIV. P. 166a(c); *D.M. Diamond Corp..,* 124 S.W.3d at 659.

## C. Article XXI Does Not Apply to Wolf Hollow's Gas Quality Claims

As discussed above, Section 24.11 bars the recovery of consequential damages. Article XXI provides an exception to Section 24.11 for deficiencies in gas **quantity**. All of Wolf Hollow's claims relate to gas **quality**. Specifically, Wolf Hollow's claim for replacement power damages stems from alleged failures of gas **quality**. Accordingly, Article XXI does not allow Wolf Hollow to recover replacement power damages under these circumstances. Therefore, Wolf Hollow's claims under Article XXI (Sections 21.1-21.3) fail and the trial court's decision barring the recovery of damages under Section 24.11 should be affirmed.

### 1. Section 21.1 Does Not Allow for Recovery of Consequential Damages For Gas Quality Claims

By its terms, Section 21.1 does not apply to claims related to gas **delivered and accepted** by Wolf Hollow. Gas quality is not mentioned. Section 21.1(a) states:

> Section 21.1 <u>Delivery Failure</u>. (a) Unless excused by an Event of Force Majeure or by any other provision of this Agreement, if at any time [El Paso] determines it will not be able to sell, deliver or cause to be delivered, or actually fails to sell, deliver or cause to be delivered, to Buyer ... at the relevant Point of Delivery a Quantity of

15

# TAB 2

## NO. 14-09-00118-CV

## IN THE COURT OF APPEALS
## FOR THE FOURTEENTH DISTRICT OF TEXAS

WOLF HOLLOW I, L.P.,
*Appellant*

v.

EL PASO MARKETING, L.P. and
ENTERPRISE TEXAS PIPELINE, INC.
*Appellees*

Appeal From The District Court of Harris County, Texas.
165th District Court
Trial Cause No. 2006-70615

## EL PASO MARKETING, L.P.'S MOTION FOR REHEARING

TO THE HONORABLE COURT OF APPEALS:

Appellee El Paso Marketing, L.P. ("El Paso"), pursuant to Tex. R. App. P.

49.1, moves for rehearing on certain issues and would respectfully show the Court

the following:

1.    **Neither the Court of Appeals nor the Texas Supreme Court reached the issue from the declaratory judgment that Article XXI of the Agreement did not apply to gas quality claims for gas delivered on the Enterprise pipeline.**

1

Article XIV and XXI as noted by Justice Hedges in her opinion.[6] If Wolf Hollow shuts down and schedules no gas from El Paso, there can be no "delivery failure." Wolf Hollow did not make that claim or even make that argument to the Supreme Court.

Wolf Hollow never contended at the Supreme Court that Section 21.1 allowed it to claim damages for replacement power when the plant was down for repairs and the Supreme Court did not find that Section 21.1 (titled "Delivery Failure") applied when no gas is being scheduled by Wolf Hollow.

The error on this point is clear. Assume El Paso delivers, and Wolf Hollow accepts and burns, gas that failed to meet the quality specifications. That gas may cause damage to the gas nozzles on the turbine. Those damages are property damages that are consequential damages as already held by this Court and affirmed by the Supreme Court. But, according to the majority opinion, if Wolf Hollow decides to fix the damage by shutting down and scheduling no gas, El Paso may be on the hook for replacement power damages where there is no failure to deliver. That is an odd turn of events and completely contrary to the plain language of the Agreement.

---

[6] All of the gas at issue in this case was delivered on the Enterprise pipeline. Article XIV provides an exception if gas is delivered on the LSP pipeline. If Wolf Hollow rejects gas on the LSP pipeline as not meeting the quality specifications, by the language of Article XIV that action would be deemed a failure to deliver and Article XXI would apply.

11

# TAB 3

FILED
IN THE SUPREME COURT
OF TEXAS
11 June 27 P4:25
BLAKE. A. HAWTHORNE
CLERK

NO. 11-0059

---

In the Supreme Court of Texas

---

EL PASO MARKETING, L.P.,
Petitioner,

v.

WOLF HOLLOW I, L.P.,
Respondent.

---

On Review from No. 14-09-00118-CV
Court of Appeals for the Fourteenth District of Texas, Houston

---

PETITIONER EL PASO MARKETING'S BRIEF ON THE MERITS

---

**HARRISON, BETTIS, STAFF,
MCFARLAND & WEEMS, L.L.P.**

D. Mitchell McFarland
Texas Bar No. 13597700
Kerry R. McEniry
Texas Bar No. 24041440
Carrie Schadle
Texas Bar No. 24051618
1400 Louisiana, Suite 3700
Houston, Texas 77002
713.843.7900 (telephone)
713.843.7901 (facsimile)

**ATTORNEYS FOR PETITIONER
EL PASO MARKETING, L.P.**

The mandatory language of Section 14.1 demonstrates as a matter of law that the remedies of assignment/subrogation are the only remedies available to Wolf Hollow with respect to gas quality for gas delivered on the Enterprise Pipeline.

The appellate court did not review the exclusive remedy issue because it affirmed the trial court's ruling on consequential damages. The declaratory judgment regarding gas quality claims is necessary to define the parties' rights for the remainder of the Agreement's term. Accordingly, this Court should reverse the holding of the court of appeals that deletes this language from the final judgment and affirm the trial court's declaratory judgment that Section 14.1 is Wolf Hollow's exclusive remedy against El Paso for gas quality claims related to the Enterprise Pipeline.

## C.    Article XXI Does Not Apply to Gas Quality Claims

As discussed above, Section 24.11 generally bars the recovery of consequential damages. Article XXI provides a limited exception to Section 24.11 for deficiencies in gas **quantity**. All of Wolf Hollow's claims, however, relate to gas **quality**. The trial court properly issued a declaratory judgment finding that Article XXI does not apply to gas quality claims for gas delivered on the Enterprise Pipeline.

The appellate court thoroughly and correctly analyzed Article XXI to find that the provision did not apply to save Wolf Hollow's consequential damage claims. *Wolf Hollow*, 329 S.W.3d at 638-39. But the court of appeals improperly deleted the declaratory judgment language that applies to the ongoing rights of the parties from the date of the Final Judgment (December 2008) to the end of the Agreement on August 9,

15

# TAB 4

FILED
IN THE SUPREME COURT
OF TEXAS
12 July 10 A10:43
BLAKE. A. HAWTHORNE
CLERK

NO. 11-0059

---

In the Supreme Court of Texas

---

**EL PASO MARKETING, L.P.,**
Petitioner,

v.

**WOLF HOLLOW I, L.P.,**
Respondent.

---

On Review from No. 14-09-00118-CV
Court of Appeals for the Fourteenth District of Texas, Houston

---

**EL PASO MARKETING'S MOTION FOR REHEARING**

---

**HARRISON, BETTIS, STAFF,**
**MCFARLAND & WEEMS, L.L.P**

D. Mitchell McFarland
State Bar No. 13597700
Kerry R. McEniry
State Bar No. 24041440
Carrie Schadle
State Bar No. 24051618
Wedge International Tower
1415 Louisiana, 37th Floor
Houston, Texas 77002
(713) 843-7900 Telephone
(713) 843-7901 Facsimile
Mitch.mcfarland@harrisonbettis.com

*ATTORNEYS FOR PETITIONER,*
*EL PASO MARKETING, L.P.*

**To the Honorable Justices of the Supreme Court of Texas:**

Pursuant to Texas Rule of Appellate Procedure 64, El Paso Marketing, L.P. ("El Paso") submits this two-part Motion for Rehearing.

First, El Paso seeks clarification to avoid confusion on remand to the court of appeals as to which claims for replacement power damages remain at issue. Wolf Hollow sought replacement power damages for two different periods: 1) for the replacement power it purchased as a result of four brief interruptions in service where El Paso claimed force majeure and, 2) for replacement power it purchased during the period of time the plant was out of service for repairs and upgrades to equipment. The court of appeals found that Wolf Hollow was barred from recovering all damages for replacement power in both categories because they were consequential damages barred by the Supply Agreement. El Paso believes this Court's holding related to Section 21.1(a) and "notice" to Wolf Hollow only affects Wolf Hollow's claim for replacement power damages during the four interruptions in service. El Paso does not believe the Court intended for its holding to extend to replacement power purchased by Wolf Hollow during the period of time the plant was out of service for repairs. Accordingly, El Paso seeks a clarification on that issue.

Second, El Paso seeks rehearing related to Wolf Hollow's claim for replacement power damages resulting from the four interruptions in service. In each instance it was undisputed in the record that gas was available and Wolf Hollow ceased taking gas as a result of the operations of its plant safety systems. Wolf Hollow caused each of the four interruptions in service and Section 21.1 of the Supply Agreement, which covers

2